James **COLES**, Plaintiff,

v.

**CILCO TERMINAL CO., INC.,** Defendant.

**Civ. A. No. B–84–300 (TFGD).**

United States District Court, D. Connecticut.

Dec. 16, 1986.

Sidney L. Dworkin, Dworkin and Bucci, Bridgeport, Conn., for plaintiff.

William F. Askinazi, Cohen & Wolf, P.C., Bridgeport, Conn., for defendant.

**MEMORANDUM OF DECISION**

DALY, Chief Judge.

Plaintiff, James Coles (Coles), filed this action against defendant, Cilco Terminal

Co., Inc. (Cilco) on May 7, 1984 alleging a deprivation of rights secured by 42 U.S.C. § 2000e *et seq.* (Title VII) and 42 U.S.C. § 1981. Specifically, plaintiff in his June 29, 1984 amended complaint charges defendant with maintaining a policy and practice of discrimination against blacks with respect to the privileges and conditions of employment, thereby depriving him of equal employment opportunities because of his race. Plaintiff further charges that following his filing of a complaint with the Commission on Human Rights and Opportunities (CHRO) and the Equal Employment Opportunity Commission (EEOC), the defendant retaliated by refusing to give plaintiff further job assignments at defendant's terminal. At the close of trial on September 30, 1985, the Court instructed the parties to submit proposed findings of fact and conclusions of law. Having reviewed these submissions and the evidence introduced at trial, the Court holds that plaintiff has failed to produce sufficient evidence of either a § 1981 or Title VII claim. In support of its holding, the Court sets forth the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff is a black citizen of the United States and was employed by the defendant when the alleged discrimination occurred. Defendant is an employer engaged in an industry affecting commerce and, when the alleged statutory violations took place, employed more than fifteen employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

2. Plaintiff began working for defendant in 1978 as a longshoreman, unloading ships, moving material in the shipyard, and performing other miscellaneous duties when needed. On January 20, 1983, the defendant stopped assigning the plaintiff to longshore duty on ships entering its terminal. Plaintiff's amended complaint at ¶ 10. Defendant's decision not to give the plaintiff work assignments was due to plaintiff's argumentative and disruptive behavior, inability to work with fellow employees in a compatible manner, and refus-

al to accept certain job assignments. At times, plaintiff's behavior endangered the safety of other employees. Although the defendant failed to notify plaintiff of its decision, the Court finds that in light of the testimony entered at trial plaintiff's employment with defendant was terminated on January 20, 1983. Prior to termination with Cilco, the plaintiff had been assigned to various tasks at the terminal on a regular basis for approximately six years.

3. On January 28, 1983, the plaintiff filed a complaint with the CHRO and EEOC alleging a denial of equal terms and conditions of employment. Plaintiff's Exhibit # 1. The CHRO on March 29, 1983 issued a finding of no cause and summary and dismissed the plaintiff's complaint for lack of sufficient evidence. Thereafter, the EEOC issued a notice of right to sue and indicated that "no reasonable cause was found to believe that the allegations made in the charge are true."

4. Plaintiff filed on May 24, 1983 a second complaint with the CHRO and EEOC alleging defendant's retaliation for his previous agency complaints in that defendant refused to assign him to work crews when work was available. Plaintiff's Exhibit # 2. The CHRO, for lack of sufficient evidence, and the EEOC, for a lack of reasonable cause to believe the truth of the charge, dismissed the second complaint, as well. *See* Plaintiff's Exhibit # 3.

5. Since 1978, defendant has implemented an Affirmative Action Program resulting in an equal or higher percentage of blacks in defendant's employ than the percentage of blacks in the general population. This fact was undisputed at trial.

## CONCLUSIONS OF LAW

1. For purposes of Title VII, the plaintiff is an "employee" as defined in 42 U.S.C. § 2000e(f), and the defendant is an "employer" as defined in 42 U.S.C. § 2000e(b). All other conditions precedent to jurisdiction including exhaustion of administrative remedies have been met.

2. Plaintiff's complaint and the evidence presented at trial indicate that plain-

tiff has chosen to prosecute his Title VII claim under a theory of disparate treatment, *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), rather than under a theory of disparate impact or effect, *see Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).[1] As the Second Circuit has recently noted, the standard for liability in a disparate treatment case is the same under both § 1981[2] and Title VII. *Martin v. Citibank, N.A.,* 762 F.2d 212, 216, 217 (2d Cir.1985) (the standard to be applied is outlined in *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668).

> Initially, a plaintiff bears the burden of establishing a *prima facie* case of racial discrimination, which requires, in essence, that [he] show that [he] belongs to a racial minority and that [he] was treated differently than similarly-situated whites. Once plaintiff has established a *prima facie* case, it then falls to the defendant to provide a non-discriminatory reason for its action, whereupon the burden shifts back to the plaintiff to show that the employer's articulated reasons are pretextual. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981).

*Id.* at 217. Plaintiff, a black citizen, clearly belongs to a racial minority. The second element requiring that plaintiff prove he was treated differently than similarly-situated whites, however, received scant attention at trial and in plaintiff's pleadings. While plaintiff's complaint alleges a policy and practice of discrimination against blacks, no evidence was introduced indicating that blacks had been treated differently than whites at the Cilco terminal other than evidence introduced through plaintiff's testimony. Such testimony, if found to be true, shows that there had been openings at the Cilco terminal for which plaintiff was qualified, defendant overlooked plaintiff for assignment, and defendant's decision not to so assign plaintiff was racially motivated. Nowhere does plaintiff identify similarly-situated whites who were treated differently to buttress his claim. Furthermore, although plaintiff alleges that the defendant's decision not to give him work assignments was due to defendant's policy and practice of discriminating against blacks, plaintiff has failed to introduce evidence of other black employees to whom defendant has refused job assignments. In fact, Willie J. Simmons, employed with Cilco for nearly eight years and also black, testified that he has never seen a disparity in treatment of employees due to race or color. The Court thus concludes that plaintiff's testimony standing alone is inadequate to establish a *prima facie* case of racial discrimination.

Moreover, even if this Court were to find sufficient evidence of a *prima facie* case, defendant more than adequately provided non-discriminatory reasons for its employment decision. Defendant introduced at trial the testimony of Twine, an investigator for the CHRO, and of DeRosa, Schine, Libby, and Simmons, all employees of Cilco. In sum, their testimony indicated that during plaintiff's recent employment with Cilco, plaintiff had engaged in argumentative and disruptive behavior which at times endangered the safety of fellow employees. Additionally, plaintiff refused to accept certain job assignments and was unable to work in a compatible manner with a number of fellow employees. Thus, even if there were sufficient evidence of a *prima facie* case of racial discrimination, the Court finds that defendant has carried its burden of proving non-discriminatory reasons for its decision not to further employ the plaintiff. The burden of proof

---

1. To the extent plaintiff bases his Title VII claim on a disparate impact theory, the Court concludes there is no evidence to support such a claim.

2. 42 U.S.C. § 1981 provides:

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

having shifted back to the plaintiff, the plaintiff has offered no evidence to show that the defendant's articulated reasons are pretextual. The Court therefore concludes that under a theory of disparate treatment there is insufficient evidence to support plaintiff's § 1981 and Title VII claims.

3. Plaintiff's § 1981 and Title VII (42 U.S.C. § 2000e–3) claims also rest upon a theory of retaliation in that defendant refused to assign plaintiff to duties at the Cilco terminal allegedly because plaintiff filed complaints with the CHRO and the EEOC. As with the racial discrimination claim, the procedural requirements of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668, also apply to plaintiff's retaliation claim. *Choudhury v. Polytechnic Institute of New York*, 735 F.2d 38, 44 (2d Cir.1984).

> [T]he employee must first establish a prima facie case. Once he does so, the burden shifts to the employer to show some legitimate non-discriminatory reason for the alleged mistreatment. The employee must then be afforded an opportunity to prove that the employer's explanation of its conduct was merely pretextual.

*Id.* at 44. "The gravamen of a retaliation claim under § 1981 is the allegation of discriminatory treatment *because of* the filing of a discrimination charge...." *Id.* (emphasis added). Thus, plaintiff must show that he engaged in activity protected by § 1981, an adverse employment action followed, and there was a causal connection between the two. *Goff v. Continental Oil Co.*, 678 F.2d 593, 599 (5th Cir.1982).

■ Likewise, the plaintiff's *prima facie* case under Title VII requires that plaintiff show that his discharge or defendant's refusal to give him assignments "was in retaliation for having ... filed a Complaint with the EEOC" or CHRO. *McCarthy v. Cortland County Community Action Program, Inc.*, 487 F.Supp. 333, 339, 340 (N.D.N.Y.1980).

> [T]he plaintiff must show: first, protected participation or opposition under Title VII known by the alleged retaliator; second, an employment action or actions disadvantaging persons engaged in protected activities; and third, a causal connection between the first two elements, that is, a retaliatory motive playing a part in the adverse employment actions.

*Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980). Thus, under either § 1981 or Title VII, the Court must find a causal connection between plaintiff's filing of his CHRO and EEOC complaints and defendant's adverse employment action. *McCarthy*, 487 F.Supp. at 340 (*prima facie* [Title VII] case may be established by showing that plaintiff was discharged "following protected activities of which her employer was aware ... provided that the dismissal occurs *soon enough after* the protected activity that a causal relationship could reasonably be inferred.") (emphasis added); *Goff v. Continental Oil Company*, 678 F.2d 593, 599 (5th Cir.1982) (§ 1981).

■ The Court concludes that plaintiff has failed to establish a sufficient causal connection to support a retaliation claim under § 1981 or Title VII. Plaintiff himself admits that defendant "stopped assigning [him] to long shore duty on ships entering its terminal" on or about January 20, 1983. Plaintiff's amended complaint at ¶ 10. Yet, it was not until January 28, 1983, eight days later, that plaintiff filed his complaints with the CHRO and EEOC. No evidence has been introduced indicating that plaintiff engaged in protected activity under § 1981 or Title VII prior to January 20, 1983, the date of plaintiff's termination. *See* finding of fact # 2. Absent such evidence and in light of the chronological order of events in plaintiff's case, the Court concludes that plaintiff has failed to provide sufficient evidence to infer the causal relationship necessary for a *prima facie* case of retaliation.

Having found that defendant did not violate Title VII or § 1981 under a theory of disparate treatment or retaliation, plaintiff's claim for relief is DENIED. Judgment shall enter accordingly.