Shatiek ALLAH, Plaintiff,

v.

CITY OF NEW YORK DEPARTMENT OF PARKS & RECREATION, Defendants.

No. 99 CIV. 1834(VM).

United States District Court, S.D. New York.

Sept. 18, 2001.

---

Charles M. Powell, Jr., Charles M. Powell, Jr., New York City, Alan E. Wolin, Wolin & Wolin, Jericho, NY, for plaintiff.

William Patrick Farley, Isaac Kaufman, Michael D. Hess, New York City, for defendant.

## DECISION AND AMENDED ORDER

MARRERO, District Judge.

### BACKGROUND

On July 31, 2001, the Court issued an Order granting defendant's motion for summary judgment and dismissing the complaint. Subsequently, on August 23, 2001, the Court held a conference with the parties and issued a detailed ruling from the bench. This Decision and Amended Order expands on both of the Court's earlier rulings, setting out the reasons for its July 31, 2001 Order.

In his amended complaint, plaintiff Shatiek Allah (hereinafter "Allah") asserted several claims pursuant to (1) 42 U.S.C. § 1981, (2) 42 U.S.C. § 2000e, Title VII of the Civil Rights Act of 1964, and (3) New York state law. In short, Allah charges that he was subjected to racial and religious discrimination, as well as retaliation up to and including the time he was terminated from his employment by the New York City Department of Parks and Recreation (hereinafter the "Parks Department"). Allah points to a finite set of discrete events to support his claims, which the Court will review for purposes of the record.

Allah claims that (1) he was wrongfully interrogated by the Parks Department Advocate's Office conducting an investigation in October 1996; (2) the Parks Department wrongfully docked his pay and vacation up to ten times, beginning shortly after the October 1996 investigation; (3) the Parks Department unlawfully denied his applications for permits to conduct special events on park property around February 1996; (4) the Parks Department improperly changed his work schedule; (5) the Parks Department failed to properly investigate his complaints to the United States Equal Employment Opportunity Commission (hereinafter the "EEOC"); (6) his supervisors improperly reassigned him to different parks facilities; (7) the Parks Department unlawfully changed his evaluations; and (8) the Parks Department unlawfully terminated his employment.

Based on these incidents, Allah advances two causes of action that essentially amount to four claims: (1) that he was subject to racial and religious discrimination in violation of 42 U.S.C. § 2000e and New York Executive Law §§ 296 & 297;[1] (2) that the Parks Department engaged in unlawful retaliation on the impermissible grounds of race, religion and the exercise of his right to file complaints before the EEOC, in violation of 42 U.S.C. § 2000e; (3) that, as evidenced by the alleged events discussed earlier, he was subjected to discrimination in the terms and conditions of his employment on account of race and religion in violation of 42 U.S.C. § 1981 and § 290 of the New York Human Rights Law;[2] (4) and that he was discriminated against on account of a prior criminal conviction.

### DISCUSSION

The Second Circuit in *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n. 1 (2d Cir. 1999), declared that claims under the New York Human Rights Law are judged under the same standards of proof as Title VII claims. Therefore, the Court will ana-

---

1. N.Y. EXECUTIVE LAW §§ 296, 297 (McKinney 2001) (hereinafter "Human Rights Law" or "New York Human Rights Law").

2. N.Y. EXECUTIVE LAW § 290 (McKinney 2001).

lyze Allah's state claims here in tandem with his federal claims.

## A. RACIAL AND RELIGIOUS DISCRIMINATION

■ With respect to Allah's first claim of racial and religious discrimination in violation of Title VII, the Court finds that most of the events that Allah alleges are barred by the applicable statute of limitations. Under this Circuit's decision in *Tewksbury v. Ottaway Newspapers,* 192 F.3d 322, 327–28 (2d Cir.1999), events that occurred prior to 300 calendar days before the filing of an EEOC complaint are time-barred. Because Allah filed the operative EEOC complaint here on April 19, 2000, events that occurred more than 300 days before that date are precluded by the statute of limitations.

■ In an attempt to extend the statute of limitations, Allah raises the "continuing violation" exception. However, in order to show continuing violations, a plaintiff must advance credible evidence of either (1) a specific discriminatory practice or policy, or (2) *related* instances of discrimination, unremedied for so long as to amount to discriminatory practice or policy. The Second Circuit reiterated these requirements in *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 766 (2d Cir.1998) (quotations and citations omitted). The Court finds that Allah's allegations and the evidence he offers to support them are inadequate to establish a continuing violation under either prong. It is insufficient to claim that one is a member of protected class and then assert that adverse events took place because of race or religion. The record Allah constructs is void of any evidence that the events he alleges were the result of a discriminatory practice or policy. Rather, the events appear to be routine matters in the ordinary course of the Parks Department's business, such as investigation into employee misconduct and standard actions taken with respect to an employee's terms of employment. Therefore, the Court finds that Allah's claims of racial and religious discrimination brought under 42 U.S.C. § 2000e pertaining to events occurring before June 24, 1999 are barred by the statute of limitations.

■ As to the balance of Allah's charges of racial and religious discrimination not barred by the statute of limitations, they fail because he has not adequately stated a prima facie case pursuant to 42 U.S.C. § 2000e and New York state law. In *Chambers v. TRM Copy Centers,* 43 F.3d 29, 37 (2d Cir.1994), the court held that in order to establish a prima facie case under 42 U.S.C. § 2000e, a plaintiff must show, *inter alia,* that (1) he suffered an adverse employment decision and (2) the adverse employment decision occurred under circumstances giving rise to an inference of discrimination. Allah has failed to establish both these elements.

The Parks Department has presented substantial evidence that it had neutral reasons, apart from race or religion, for relocating Allah to a different park and for ultimately terminating his employment. In addition, Allah has not come forward with sufficient or substantial evidence by which a rational jury could reasonably support an inference of racial or religious discrimination in the Parks Department's actions. The Parks Department, to the contrary, has advanced numerous legitimate grounds for its actions.

Accordingly, the Parks Department's motion for summary judgment as to Allah's claims of racial and religious discrimination in violation of 42 U.S.C. § 2000e and New York Human Rights Law is granted and those claims are dismissed.

## B. UNLAWFUL RETALIATION

■ Allah's second claim is that the Parks Department engaged in unlawful retaliation by transferring him to a different work location and by terminating his employment because of Allah's filing of EEOC complaints, an admittedly protected activity. This claim also fails because Allah has failed to make out a prima facie case. The elements of a prima facie retaliation claim are well-settled in this circuit. In accordance with *Cosgrove v. Sears Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993), a plaintiff must show, *inter alia*, that (1) the employer took adverse employment action against plaintiff, and (2) there was a causal connection between plaintiff's protected activity and the adverse action.

With respect to Allah's transfer to a different work location, this Court concurs with recent precedent in this Circuit that a mere reassignment on the job, without more, cannot constitute a materially adverse change in the terms and conditions of Allah's employment. *See Castro v. New York City Board of Education*, No. 96 Civ. 6314, 1998 WL 108004, **6–7 (S.D.N.Y. Mar.12, 1998) (holding that plaintiff's transfer from teaching Kindergarten to Second Grade did not constitute materially adverse change in employment).

■ Regarding his termination, Allah has failed to carry his burden on the second element, namely, showing a causal connection between the protected activity and the adverse employment action. To establish that causal connection, the Second Circuit's decision in *Sumner v. United States Postal Service*, 899 F.2d 203, 210 (2d Cir.1990) held plaintiff must show either (1) discriminatory treatment subsequent to the protected activity, or (2) evidence of retaliatory animus. The factual record here, however, demonstrates nothing more than legitimate termination proceedings brought on by Allah's own disruptive behavior at work. Allah has not established that the proceedings were discriminatory or animated by retaliatory motives.

On this basis, the Parks Department's motion for summary judgment is granted as to Allah's unlawful retaliation claim.

## C. EMPLOYMENT DISCRIMINATION

■ For the same reasons, Allah's claim of unlawful discrimination in the terms and conditions of his employment pursuant to § 1981 must also fail. In *Choudhury v. Polytechnic Institute of New York*, 735 F.2d 38, 45 (2d Cir.1984), the Second Circuit held that the same elements that constitute a claim of employment discrimination under Title VII apply to a claim under 42 U.S.C. § 1981. Because Allah has not demonstrated a materially adverse employment action and a discriminatory or retaliatory animus, he has failed to make out a prima facie case under 42 U.S.C. § 1981.

## D. EMPLOYMENT DISCRIMINATION BASED ON PRIOR CRIMINAL CONDUCT

■ Finally, Allah claims that he was discriminated against on account of a prior criminal record, in violation of the New York Human Rights Law § 296(15). The record reflects, however, that Allah's only criminal conviction occurred 12 years after he was hired. Thus, at the time the Parks Department employed him, Allah had no criminal record.

Human Rights Law § 296(15) makes it unlawful, unless specifically sanctioned by statute, to deny employment by reason of a prior criminal conviction. In doing so, § 296(15) specifically cross-references Article 23 of the New York Corrections Law, §§ 750–755; that is, denial of employment would be unlawful under § 296(15) "when such denial is in violation of the provisions

of article twenty-three-A of the correction law."

The relevant case law makes it clear that both Article 23 of the Corrections Law and the New York Human Rights Law were intended to protect applicants allegedly discriminated against at the time of hiring on the basis of a prior criminal record. *See Peluso v. Smith,* 142 Misc.2d 642, 540 N.Y.S.2d 631, 634 (N.Y.Sup.1989). Allah's criminal record had no bearing on his hiring, and furthermore, beyond conclusory allegations, Allah has failed to come forward with any meaningful evidence that his termination had anything to do with his past criminal record. Thus, Allah is unable to establish discrimination pursuant to § 296(15) of the New York State Human Rights law.

### ORDER

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion for summary judgment is granted in accordance with the Court's July 31, 2001 Order; and it is further

**ORDERED** that the Court's July 31, 2001 Order is amended to incorporate the discussion contained herein and as stated on the record in a conference with the parties on August 23, 2001; and it is finally

**ORDERED** that in accordance with plaintiff's request and for good cause shown at the Court's August 23, 2001 conference with the parties, the time for filing notice of appeal, if any, shall begin thirty (30) days from the date of this Amended Order.

The Clerk of Court is directed to close this case.

**SO ORDERED.**